# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

---

IRA D. MOTLEY and others      )
similarly situated,              )
                               )
     Plaintiffs,             )
                               )
vs.                            )     No. 12-cv-2447 JDB/tmp
                               )
W.M. BARR & COMPANY, INC.,    )
                               )
     Defendant.             )

---

### REPORT AND RECOMMENDATION

---

Before the court by order of reference is plaintiff Ira D. Motley's motion to conditionally certify a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. (ECF No. 18.) Defendant W.M. Barr & Company, Inc. ("Barr") filed a response in opposition to the motion, to which Motley filed a reply.[1] With leave of court, Barr filed a sur-reply and Motley filed a response to Barr's sur-reply.

For the reasons below, it is recommended that the motion be granted.

### I. PROPOSED FINDINGS OF FACT

---

[1]Barr requested oral argument in its response brief. The court believes oral argument would not be helpful, as the parties' arguments have been fully developed through their briefs. Motley's motion includes 299 pages of exhibits, Barr's response includes 232 pages of exhibits, and Motley's reply includes 108 pages of exhibits.

Barr is a manufacturer of specialty cleaning products and is located in Memphis, Tennessee. Motley was hired by Barr in October 2006 as an hourly, non-exempt employee. Motley worked in the warehouse as an "Order Filler," and was employed by Barr through April 18, 2012. He was fired on April 18 for, according to Barr, his poor attendance record. On June 11, 2012, Motley filed a complaint on behalf of himself and other similarly situated employees against Barr. In the complaint, Motley alleges that Barr violated the Fair Labor Standards Act ("FLSA") by failing to pay overtime compensation to him and other employees for work performed during their unpaid meal breaks. Motley's complaint also includes a state law claim for unjust enrichment, apparently based on Barr's failure to pay straight time compensation for work performed during unpaid meal breaks. According to the complaint, during the time that Motley was employed by Barr, it had a policy of automatically deducting thirty minute meal periods from its employees' time records, rather than requiring employees to individually record their lunch breaks. Employees regularly were unable to take full, uninterrupted meal breaks because they were required to perform work during their breaks. Motley claims that Barr knew or should have known about this "off the clock" work because it occurred "in plain sight and at the instruction of Defendant's management." Motley further claims that the employees were never trained or instructed on how to reclaim a meal period when they were required

to perform compensable work during that time. As a result, Barr and other similarly situated employees performed work in excess of forty hours per week on a regular and repeated basis, without receiving overtime compensation.

In the instant motion, Motley moves the court to: (1) conditionally certify this case to proceed as an opt-in collective action for FLSA overtime violations and supplemental claims under Tennessee law, on behalf of non-exempt employees of Barr who worked in the warehouse and/or shipping/receiving related positions during the last three years and who were subject to Barr's practice of automatically deducting employees' meal breaks;[2] (2) direct Barr to provide a list of names, last known addresses, and last known telephone numbers for all employees who fall within the class; (3) authorize that notice be mailed to the employees, posted prominently at any facility where putative class members work, and enclosed with putative class members' next regularly scheduled

---

[2]Motley originally requested that the court conditionally certify a class of employees for a period of six years prior to the filing of the complaint. This request was based on Motley's belief that the statute of limitations for the state law unjust enrichment claim is six years. However, in his reply brief, Motley concedes that this court has rejected that argument, holding that the statute of limitations for an unjust enrichment claim under Tennessee law is three years. See Montgomery v. Decatur Cty. Gen. Hosp., No. 1:11-cv-1096 (W.D. Tenn.) (Mar. 19, 2012 Order, ECF No. 28) (Breen, J.); Carter v. Jackson-Madison Cty. Hosp. Dist., No. 1:10-cv-1155 (W.D. Tenn.) (Dec. 13, 2011 Order, ECF No. 101) (Breen, J.). Based on these cases, Motley has now withdrawn his request to have the class conditionally certified for a six-year period.

paychecks; (4) toll the statute of limitations for the putative class as of the date that the court grants the motion; and (5) order that the opt-in plaintiffs' consent forms be deemed "filed" on the date they are postmarked. Attached to Motley's motion, among other exhibits, are his own declaration as well as a declaration of another former Barr employee, Kenneth Watkins, who also worked as an Order Filler in the warehouse. Motley's declaration, dated August 20, 2012, states as follows:

1. My name is Ira D. Motley. I am of majority age and am competent to execute this Declaration. I have personal knowledge of the facts stated herein.

2. I live in Memphis, Tennessee. I am a former employee of [Barr].

3. I worked for Defendant from October of 2006 through April 18, 2012. I was paid by the hour for my work, with my rate of pay at the end of my employment being $13.46/hour. My position was located in the warehouse. There are other similarly situated employees that also worked in the warehouse.

4. I regularly worked over forty (40) hours during a workweek, as did my co-workers.

5. I and my co-workers were [sic] regularly and repeatedly worked "off the clock." Defendant knew that my co-workers and I were working "off the clock" without proper compensation.

6. The "off the clock" work performed by myself and my co-workers was in the form of being required to perform compensable work during meal breaks where Defendant's timekeeping system automatically deducted a thirty minute meal break.

7. I and my co-workers regularly and routinely worked during our meal breaks without pay. Defendant automatically deducted a thirty (30) minute meal period even though we did not receive a full uninterrupted meal

-4-

break.

8. Defendant knew or should have known that I and my co-workers were working through our meal breaks without compensation. This "off the clock" work was performed at the direction of Defendant and in plain sight. Furthermore, we were never instructed or trained on how to reclaim a meal period where we were required to perform compensable work. This practice continued throughout my employment with Defendant.

9. I have spoken with my former co-workers regarding the problem of working "off the clock," and they have experienced the same problem of not being compensated for all hours worked. I also witnessed my co-workers performing the same "off the clock" work as me while employed by Defendant.

(Motley Decl. 8/20/12, ECF No. 18-4.) Watkins's declaration, dated

August 27, 2012, is substantively identical to Motley's

declaration. Also attached to Motley's motion are a proposed

notice and proposed consent form. (ECF No. 18-2, Ex. A & B.)

In response, Barr urges the court to deny conditional

certification because (1) Motley's vague and conclusory

interrogatory responses indicate that he has no knowledge to

support his class claims and that he cannot make the required

showing of "substantial allegations" to support his claims;[3] (2)

---

[3]Barr's interrogatories and Motley's answers are attached as Exhibit B to Barr's response brief. By way of example, Interrogatory No. 2 and the corresponding answer read as follows:

INTERROGATORY NO. 2 (Basis for Overtime Claim): Identify and describe the facts of which Plaintiff Ira D. Motley or his agents or representatives have knowledge and upon which Plaintiff relies to establish that Defendant failed to pay Plaintiff overtime pay or any other type of pay or compensation as alleged in the Complaint; and identify and describe all documents and other tangible evidence

under Federal Rules of Civil Procedure 33 and 37, Motley should not be permitted to use evidence (such as the supporting declarations) to support his claims where he is unable or unwilling to provide responses to interrogatories that relate to those claims; (3) Watkins's declaration contradicts a declaration he previously provided to Barr (Exhibit D to Barr's response brief)[4]; (4)

---

> which in any way relates to, evidences or supports any such fact or facts as alleged in the Complaint.
>
> Answer: Plaintiff and other similarly situated employees know that they worked through their meal breaks and/or their meal breaks were interrupted without compensation in the plain sight of Defendant. Furthermore, Defendant and Defendant's management knew or should have known that Plaintiff and other similarly situated employees were working through their meal breaks and/or their meal breaks were being interrupted without compensation based on the job duties and responsibilities.
>
> Plaintiff and others similarly situated were continually reminded that they were in distribution; orders needed to be filled within certain time limits and those time limits needed to be met. The warehouse wherein the Plaintiff and others similarly situated worked had two lunch shifts. Defendant and Defendant's management would walk through the warehouse floor and see Plaintiff and others similarly situated working through the lunch shift. Defendant also instructed plaintiff and others similarly situated to work through their meal breaks to fill orders. Plaintiff and others similarly situated were never paid for compensable work performed during their meal breaks.

(Def.'s Resp. at 10 & Ex. B) (emphasis in original). Motley's answers to other interrogatories are substantially similar to his answer to Interrogatory No. 2.

[4]In Watkins's prior declaration, dated June 28, 2012, he states that his supervisor never requested that he work through lunch. Watkins states that he occasionally chose to work through part of his lunch breaks, taking only ten to fifteen minutes for lunch, but

countervailing evidence submitted by Barr, in the form of declarations from thirteen other Order Fillers, shows that these employees received their full thirty minutes of uninterrupted lunch time and that they received overtime pay for any overtime worked (Exhibit C to Barr's response brief); and (5) the declarations of Motley and Watkins are not based on personal knowledge and contain inadmissible hearsay. Alternatively, Barr contends that should the court decide to conditionally certify this collective action, the class should be limited to Order Fillers, Barr should not be required to produce potential opt-in plaintiffs' phone numbers, and notice should be limited to one court-directed mailing.

In Motley's reply, he disputes many of the arguments raised in Barr's opposition brief. In response to the declarations of Watkins and Chester Caldwell (who also is an Order Filler) attached to Barr's brief, Motley filed supplemental declarations from Watkins and Caldwell, both of whom have since filed consents to opt-in as plaintiffs. (See ECF Nos. 17, 23.) Watkins's supplemental declaration, dated October 24, 2012, states as follows:

> 1. My name is Kenneth J. Watkins. I am of majority age and am competent to execute this Declaration. I have personal knowledge of the facts stated herein.
>
> 2. I live in Memphis, Tennessee. I am a former

---

that his supervisor was unaware of him doing so. He states that he has "always been paid for [his] overtime." (Watkins Decl. 6/28/12, ECF No. 22-4 at 10-13.)

employee of [Barr].

3. At the time this lawsuit was filed by Ira Motley, I was still working for [Barr].

4. Defendant gathered me and the other "Order Fillers" and had us meet with Human Resources one at a time. During this meeting, we were asked questions regarding meal breaks and working through them.

5. We were not permitted to write our own responses to the questions.

6. We were not given an opportunity to review what was written based on our responses.

7. At the conclusion of the interview, we were told to sign and initial and were sent back to work. We were very busy at work and were falling behind during these interviews. This, plus being interviewed by my employer, made this an incredibly stressful situation.

8. On October 18, 2012, I was able to review the statement that was written by Defendant on my behalf. The statement is not accurate and is not what I told Defendant.

9. I did tell them that I occasionally work through my meal breaks, but I did not tell them that it was by my choice. I also did not tell Defendant that work was not at the request of my supervisor and that my supervisor was not aware of it.

10. My supervisor(s) knew that I and my co-workers were required at times to work through our meal breaks and directed us to do so on some of these occasions. We were required by Defendant to complete our job duties in a time sensitive manner in order to meet shipping deadlines. Failure to meet these deadlines would result in discipline. As such, our job duties necessitated working through our meal breaks or only receiving a partial meal break.

11. Finally, when questioned about my pay checks being correct, I responded that they were for the time recorded in the system. I was not asked if they were correct with regard to work performed "off the clock" during meal breaks and did not understand that this was part of the

question being asked of me by Defendant.

(Watkins Decl. 10/24/12, ECF No. 24-1.) Caldwell's declaration, also dated October 24, 2012, mirrors the statements contained in Watkins's August 27 and October 24 declarations. (Caldwell Decl. 10/24/12; ECF No. 24-1.)[5]

## II. PROPOSED CONCLUSIONS OF LAW

## A. Standard for Conditional Certification Under the FLSA

Section 216(b) of the FLSA permits employees to recover unpaid compensation by collectively suing an employer under certain circumstances. That subsection states in pertinent part as follows:

> Any employer who violates [the minimum wage and maximum hours provisions] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case my be, and in an additional equal amount as liquidated damages. [. . .] An action to recover [for such liability] may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Thus, in order to proceed collectively, named plaintiffs must demonstrate that they are "similarly situated" to the putative opt-in plaintiffs - the employees they seek to notify

---

[5]Caldwell's declaration, although titled "Declaration of Chester Caldwell" and signed by Caldwell, begins in paragraph 1 with, "My name is Kenneth J. Watkins." This appears simply to be a typographical error.

and represent.  Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006).  A collective action brought under § 216(b) is distinguishable from a class action, which is governed by Federal Rule of Civil Procedure 23, in that plaintiffs in a collective action must "opt-in" rather than "opt-out" of the lawsuit.  Id.  A plaintiff can have FLSA claims as well as supplemental state law claims as part of the collective action.  O'Brien v. Ed. Donnelly Enters., Inc., 575 F.3d 567, 580 (6th Cir. 2009); Carter v. Jackson-Madison Cty. Hosp., No. 1:10-cv-01155-JDB-egb, 2011 WL 1256625, at *13 (W.D. Tenn. Mar. 31, 2011).

Courts in the Sixth Circuit follow a two-step process to determine whether plaintiffs are similarly situated.[6]  In re HCR ManorCare, Inc., No. 11-3866, 2011 WL 7461073, at *1 (6th Cir. Sept. 28, 2011); see also O'Brien, 575 F.3d at 583; Comer, 454 F.3d at 544.  The first stage is known as "conditional certification," which typically occurs at the beginning of discovery and is often referred to as the "notice" stage.  See, e.g., Frye v. Baptist Mem'l Hosp., No. 11-5648, 2012 WL 3570657, at *3 (6th Cir. Aug. 21,

_____

[6]In its sur-reply brief, Barr argues that the two-step procedure is invalid because it "ignores the Federal Rules of Civil Procedure and the teaching of [Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011)]."  The Court of Appeals for the Sixth Circuit has rejected this argument, stating that "[w]e have, however, implicitly upheld the two-step procedure in FLSA actions."  In re HCR Manorcare, Inc., 2011 WL 7461073, at *1 (citing O'Brien and Comer); see also Ware v. T-Mobile USA, 828 F. Supp. 2d 955-56 (M.D. Tenn. 2011); Creely v. HCR ManorCare, Inc., Nos. 3:09 CV 2879, 3:10 CV 417, 3:10 CV 2200, 2011 WL 3794142, at *1 (N.D. Ohio July 1, 2011).

2012). The second stage is final certification, which occurs toward the end of discovery and must satisfy a stricter standard. Id. Upon a motion for conditional certification, a district court "may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." Comer, 454 F.3d at 546.

At the conditional certification stage, the plaintiff's burden is "fairly lenient" as he "must show only that 'his position is similar, not identical, to the positions held by the putative class members.'" Id. at 546-47 (quoting Pritchard v. Dent Wizard Int'l, 210 F.R.D. 591, 595 (S.D. Ohio 2002)); see also Wade v. Werner Trucking Co., No. 2:10-CV-00270, 2012 WL 5378311, at *3 (S.D. Ohio Oct. 31, 2012); Martin v. Psalms, Inc., No. 2:10-cv-02532-STA-dkv, 2011 WL 2882387, at *3 (W.D. Tenn. July 15, 2011). The court's decision to conditionally certify a class "need only be based on a modest factual showing" by the plaintiff, and thus, as the Sixth Circuit has recognized, this first stage "typically results in conditional certification of a representative class." Id. at 547 (internal quotation marks omitted); see also White v. Baptist Mem'l Hosp. Health Care Corp., 699 F.3d 869, 877 (6th Cir. 2012); Garrett v. Sitel Operating Corp., No. 10-cv-2900-STA-cgc, 2011 WL 5827240, at *4 (W.D. Tenn. Nov. 18, 2011); Martin, 2011 WL 2882387, at *6. At this stage, the court does not resolve factual disputes or evaluate the weight the evidence, merits of the claims, or the

credibility of the plaintiffs. See, e.g., Wade, 2012 WL 5378311, at *3; Burdine v. Covidien, Inc., No. 1:10-CV-194, 2011 WL 2976929, at *2 (E.D. Tenn. June 22, 2011); Brasfield v. Source Broadband Servs., LLC, 257 F.R.D. 641, 642 (W.D. Tenn. 2009).

Although the FLSA does not define the meaning of "similarly situated," the Sixth Circuit in O'Brien stated that "plaintiffs are similarly situated when they suffer from a single, FLSA—violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." O'Brien, 575 F.3d at 585. "Showing a 'unified policy' of violations is not required, though." Id. at 584. Plaintiffs may also be similarly situated where "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." Id. at 585. In O'Brien, the court found that the plaintiffs' claims were unified because "plaintiffs articulated two common means by which they were allegedly cheated: forcing employees to work off the clock and improperly editing time-sheets." Id.

**B. Similarly Situated**

Motley seeks conditional certification of a class comprised of "non-exempt employees [who] worked for [Barr] in the warehouse and/or other shipping/receiving related positions during the last [three] years who were subject to [Barr's] practice of

-12-

automatically deducting employees' meal breaks" and were not compensated for work performed during their meal breaks. Motley supports his motion with his complaint, his own declaration, two declarations submitted by Watkins, a declaration submitted by Caldwell, and the opt-in consents filed by Watkins and Caldwell. Collectively, these documents show that (1) Motley, Watkins, and Caldwell worked as Order Fillers in Barr's warehouse; (2) they were employed as hourly, non-exempt employees; (3) Barr had a policy of automatically deducting thirty-minute meal periods from its employees' time records; (4) Motley, Watkins, Caldwell, and others similarly situated were routinely required to work during their thirty-minute meal breaks; (5) this "off the clock" work was performed at the direction of Barr and in plain sight; (6) plaintiffs were never instructed or trained on how to reclaim a meal period during which they were required to perform compensable work; and (7) as a result, Motley, Watkins, Caldwell, and others similarly situated performed work in excess of forty hours per week without receiving overtime compensation.

The court finds particularly instructive two recent opinions issued by District Judge Breen: <u>Carter v. Jackson-Madison Cty. Hosp.</u>, 2011 WL 1256625, and <u>Montgomery v. Decatur Cty. Gen. Hosp.</u>, No. 1:11-cv-1096 (W.D. Tenn.) (Mar. 19, 2012 Order, ECF No. 28). The plaintiff in <u>Carter</u>, Karen Louise Carter, was an hourly employee of Jackson-Madison County Hospital District d/b/a West

-13-

Tennessee Healthcare ("JMCHD"). <u>Id.</u> at *1. Carter was responsible for staffing patient beds on one of the hospital's floors. <u>Id.</u> She claimed that JMCHD regularly required her to work during scheduled meal breaks but automatically deducted her pay for the length of those breaks. <u>Id.</u> She alleged that JMCHD utilized a computerized time and attendance system to automatically deduct a thirty minute meal break from each work shift pursuant to its "Meal Break Deduction Policy." <u>Id.</u> Carter contended, however, that JMCHD did not ensure that she and other employees were completely relieved of their responsibilities during those breaks and routinely permitted employees to work during that period. <u>Id.</u> She alleged that the hospital either knew or had reason to believe that compensable work was being performed during unpaid meal periods because (1) she had complained about the demands on staff and the inability to take a full break; (2) the work was performed during meal breaks in plain sight of her supervisors; and (3) the hospital was aware of the overall demands of the health care industry and staffing shortages. <u>Id.</u> at *2. Carter filed a collective action complaint against JMCHD, alleging violations of the FLSA for unpaid overtime compensation and asserting a common law claim of unjust enrichment for unpaid straight time compensation. <u>Id.</u> at *2-3.

In support of her motion for conditional certification, Carter submitted her own affidavit, which stated, among other things, that she and other hourly employees regularly were required to work

during unpaid meal breaks; JMCHD never explained to her or other employees what constituted a compensable meal break under the FLSA; JMCHD never trained her or other employees that a meal eaten while working was compensable work time; and supervisors were aware of this problem yet did not ensure that employees were completely relieved of their work duties during the meal breaks. Id. at *14-15. Carter also submitted additional affidavits from two other employees, Pamela Randle and Jeannette Brackens. Id. at *16. Randle worked as a lab technician and Brackens worked as a surgical technologist. Id. Both of their affidavits were substantially similar to Carter's affidavit. Id. In granting the motion for conditional certification, the court stated as follows:

> Under the circumstances of this case, the Court finds
> that the factually-detailed complaint, affidavit and
> consent form of the named plaintiff, and affidavits and
> consent forms of two additional employees of the
> Defendant are sufficient to make a "modest factual
> showing" that Carter is similarly situated to prospective
> class members. Those materials present evidence that
> JMCHD employs a company-wide "Meal Break Deduction
> Policy" whereby a thirty minute meal period is
> automatically deducted from the time worked of all hourly
> employees. However, Carter, Randle, and Brackens submit
> that they and other employees are frequently required to
> continue working during that uncompensated period.
> O'Brien held that plaintiffs are similarly situated when
> their claims are unified by a common theory of
> defendant's statutory violations. . . . Carter and the
> two proposed plaintiffs have presented a common theory
> here – the denial of statutory overtime wages and
> "straight time" resulting from Defendant's failure to
> relieve them of their duties during uncompensated meal
> breaks. That common theory is a sufficient basis to find
> that Carter and the proposed class members are "similarly
> situated."

Id. (internal citations and quotations omitted).

In <u>Montgomery</u>, the plaintiff was an emergency room registration clerk who worked for Decatur County General Hospital ("DCGH"), a not-for-profit community hospital in Parsons, Tennessee. (<u>Montgomery</u>, No. 1:11-cv-1096, ECF No. 28 at 1.) Like the plaintiff in <u>Carter</u>, Montgomery claimed that DCGH violated the FLSA by subjecting all hourly employees to a policy that automatically deducted thirty minutes for meal breaks, even when they performed compensable work during the meal break, without ensuring that employees were completely relieved from job duties during that period. <u>Id.</u> She alleged that DCGH knew or had reason to know that employees performed work during their unpaid meal breaks because they did so on the defendant's premises and in plain sight, and because the defendant was aware of the demands of the health care industry and staffing shortages. <u>Id.</u> at 2. Montgomery sought conditional certification of "all employees of Defendant who, like Plaintiff, were non-exempt employees and subject to Defendant's policy and practice of automatically deducting meal breaks within the last six years." <u>Id.</u> In support of her motion, she attached her own declaration as well as a declaration from Tracy Pevahouse, who worked as an Outpatient Nursing Supervisor for DCGH. <u>Id.</u> at 2-4. Both declarations in essence stated that DCGH had a record keeping system that automatically deducted thirty minutes for meal breaks; hourly employees regularly were required

to perform compensable work during unpaid meal breaks; DCGH never explained to its employees what constituted a compensable meal break under the FLSA and never trained them that an interrupted meal was compensable; and the work load and staffing situation caused hourly employees to work through their meal breaks. Id. The court ruled that Montgomery and Pevahouse's declarations sufficiently presented "a common theory in this case – the denial of statutory overtime wages and 'straight time' resulting from DCGH's failure to relieve them of their duties during uncompensated meal breaks," and that "[u]nder the lenient standard applicable at this first stage of the litigation, Montgomery's proffered evidence is sufficient to show that she is similarly situated with the putative plaintiffs." Id. at 8.

Like the plaintiffs in Carter and Montgomery, Motley's submissions are sufficient to make a modest factual showing that Barr employs a meal break deduction policy whereby a thirty minute meal period is automatically deducted from the timed worked of all hourly employees in the warehouse; Motley, Watkins, Caldwell, and other workers are frequently required to work during that uncompensated meal period; the plaintiffs and other workers regularly worked over forty hours a week without overtime compensation; Barr knew or should have known about this "off the clock" work because it was performed in plain sight and at the direction of supervisors; and Barr did not provide instruction or

training to its employees about how to reclaim a meal period when they were required to perform compensable work. Based on this record, the court finds that Motley has made a modest factual showing that he is similarly situated to prospective class members.

Barr raises several arguments in opposition to conditional certification. First, Barr contends that Motley's interrogatory responses indicate that he has no knowledge to support his class claims and that he cannot make the required showing of "substantial allegations" to support his claims. The court disagrees. As an initial matter, the court is unaware of any binding case authority that requires a plaintiff to meet Barr's "substantial allegations" standard at the conditional certification stage. Although the named plaintiff must introduce "substantial evidence" that the opt-in plaintiffs are similarly situated to avoid *decertification* at the second stage, see Frye v. Baptist Mem. Hosp., Inc., No. CIV 07-2708, 2010 WL 3862591, at *2 (W.D. Tenn. Sept. 27, 2010), no such requirement is required of the named plaintiff at the first stage. Indeed, a demand that Motley present "substantial evidence" or "substantial allegations" at the first stage would run afoul of the lenient standard recognized by the courts within this circuit. As to Barr's challenge to Motley's inability to provide detailed facts to support his claims, because conditional certification occurs before the parties engage in significant discovery, a plaintiff's inability to provide detailed facts to support his claims is not

fatal to the issue of conditional certification. The parties apparently have not taken any depositions and have engaged in only limited discovery. As for the sufficiency of Motley's interrogatory responses, Barr has not filed a motion to compel pursuant to Rule 37(a), nor has it filed a motion for sanctions pursuant to Rule 37(d). See, e.g., Fed. R. Civ. P. 37(d)(1)(A) ("the court where the action is pending may, on motion, order sanctions . . . ."). In any event, the court finds that Motley's interrogatory responses, while perhaps somewhat lacking in factual details, are not so deficient that they would warrant the severe sanction under Rule 37 of excluding his supporting declarations.

Next, Barr argues that Watkins's August 27, 2012 declaration, which Motley uses in support of conditional certification, contradicts his June 28, 2012 declaration. However, in Watkins's supplemental declaration dated October 24, 2012, he explains that he did not fully understand what was being asked of him by Barr's representative and that he was not allowed to write his own responses or review his answers. Barr also contends that the declarations it submitted from other Order Fillers demonstrate that there is no merit to Motley's claims. As mentioned earlier, at the conditional certification stage, the court does not resolve factual disputes or evaluate the weight the evidence, merits of the claims, or the credibility of the plaintiffs. See, e.g., Wade, 2012 WL 5378311, at *3; Burdine, 2011 WL 2976929, at *2; Brasfield, 257

F.R.D. at 642; see also Monroe v. FTS USA, LLC, 257 F.R.D. 634, 638-39 (W.D. Tenn. 2009) ("all factual questions and issues of credibility must be resolved in favor of the moving party in a motion for conditional certification"); Scott v. Hearland Home Fin., Inc., No. 1:05-CV-2812-TWT, 2006 WL 1209813, at *3 (N.D. Ga. May 3, 2006) ("[T]he Court declines to resolve factual issues or make credibility determinations at this stage. [. . .] At the notice stage [] it is not appropriate for the Court to address the merits of the Plaintiffs' claims or weigh the evidence.").  To the extent Barr relies on these Order Filler declarations to show a lack of interest in joining the collective action, the court in Carter found that, based on the participation of the plaintiff and two additional hospital employees in the lawsuit, "there is sufficient interest to conditionally certify a class and permit court-supervised notice."  Carter, 2011 WL 1256625, at *17. Likewise, this court finds that the interest shown by at least three employees in participating in this collective action shows sufficient interest to conditionally certify a class. Additionally, based on the supplemental declarations submitted by Watkins and Caldwell, which raise concerns regarding the methods used by Barr to obtain the declarations from the Order Fillers, it may be the case that some of these same employees may also have an interest in joining this action.

Barr also challenges the declarations of Motley and Watkins on

the grounds that they are not based on personal knowledge and contain inadmissible hearsay. In <u>Montgomery</u>, the court, relying on <u>Monroe v. FTS USA, LLC</u>, 257 F.R.D. 634 (W.D. Tenn. 2009) and <u>White v. MPW Indus. Servs., Inc.</u>, 236 F.R.D. 363 (E.D. Tenn. 2006), rejected the defendant's hearsay objections to the plaintiff's affidavits. In <u>White</u>, the court, in granting a motion for conditional certification, refused to strike portions of the plaintiffs' affidavits, which the defendant argued contained inadmissible hearsay. The court stated that "[a]t this preliminary stage and for these preliminary purposes, plaintiffs need not come forward with evidence in a form admissible at trial." <u>Id.</u> at 368 (internal quotation marks omitted). The court in <u>White</u> distinguished conditional certification from summary judgment on two grounds: (1) conditional certification occurs at a much earlier stage in litigation, and thus the plaintiff "has not yet been afforded an opportunity . . . to test fully the factual basis for his case"; and (2) "motions for conditional certification, unlike motions for summary judgment, do not seek the final disposition of a case on the merits." <u>Id.</u> While the court determined that affidavits in support of motions for conditional certification do not need to meet all evidentiary standards for admissibility, it stated that "affidavits submitted at the notice stage must be based on the personal knowledge of the affiant." <u>Id.</u> at 369. Similarly, in <u>Monroe</u>, the court stated that "courts in the Sixth Circuit have

-21-

held that plaintiff's evidence on a motion for conditional certification must not meet the same evidentiary standards applicable to motions for summary judgment because to require more at this stage of litigation would defeat the purpose of the two-stage analysis under Section 216(b)." Monroe, 257 F.R.D. at 639 (internal quotation marks omitted); see also Fisher v. Mich. Bell Tel. Co., 665 F. Supp. 2d 819, 826 (E.D. Mich. 2009) ("This Court rejects Defendant's argument that Plaintiffs' declarations should be disregarded because they are not based on personal knowledge and contain inadmissible hearsay."); Crawford v. Lexington-Fayette Urban Cnty. Gov't, No. 06-299 JBC, 2007 WL 293865, at *4 (E.D. Ky. Jan. 26, 2007) ("When, after both sides have conducted discovery, the defendant moves for decertification in the FLSA collective action, the plaintiffs must demonstrate that any evidence conditionally admitted during the conditional certification process is admissible under the Federal Rules of Evidence."). Here, the court finds that the Motley, Watkins, and Caldwell declarations present admissible evidence based on their own personal knowledge. Therefore, the court rejects Barr's arguments against the admissibility of these declarations at this conditional certification stage.

Finally, Barr argues that if the court decides to grant conditional certification, the class should be limited only to Order Fillers. The court disagrees. While Barr is correct that

Motley, Watkins, and Caldwell all held the position of Order Filler, that does not necessarily mean that Order Fillers are the only proper class members. The present record shows that Barr had an automatic meal break deduction practice that applied to all of its employees, not just Order Fillers. Plaintiff's supporting declarations state that "co-workers" (not just Order Fillers) repeatedly worked "off the clock" without proper compensation. According to Motley's interrogatory responses, employees who worked in the warehouse were "continually reminded that they were in distribution" and that "orders needed to be filled within certain time limits." While these employees would include Order Fillers, they potentially would also include other employees involved in distribution. Therefore, the court finds that the class should not be limited only to Order Fillers.

**C.  Contact Information for Class Members and Methods of Notice**

Motley requests that the court direct Barr to provide a list of names, last known addresses, and last known telephone numbers for all employees who fall within the class. He also asks that the court authorize that notice be mailed to the employees, posted prominently at any facility where putative class members work, and enclosed with putative class members' next regularly scheduled paychecks. Barr objects to production of the employees' telephone numbers and argues that notice should be limited to one court-directed mailing. The court finds that production of employee

telephone numbers is appropriate. See Montgomery, No. 1:11-cv-1096, ECF No. 28 at 16 (authorizing production of putative class members' telephone numbers over defendant's objection, citing Dallas v. Alcatel-Lucent USA, Inc., No. 09-14596, 2012 WL 424878, at *8 (E.D. Mich. Feb. 9, 2012); Miller v. Jackson, No. 3:10-1078, 2011 WL 1060737, at *8 (M.D. Tenn. Mar. 21, 2011)). The court further rejects Barr's objection to requiring Barr to post notice of this lawsuit at the work location. See Montgomery, No. 1:11-cv-1096, ECF No. 28 at 16 (granting plaintiff's request, over defendant's objection, to post notice of the lawsuit at employer's work location, citing D'Antuono v. C & G of Groton, Inc., No. 3:11cv33 (MRK), 2011 WL 5878045, at *6 (D. Conn. Nov. 23, 2011); Rosario v. Valentine Ave. Disc. Store, Co., Inc., 828 F. Supp. 2d 508, 521 (E.D.N.Y. 2011)). However, the court finds that requiring Barr to attach notice to its employees' paychecks is not warranted. See Montgomery, No. 1:11-cv-1096, ECF No. 28 at 17 (denying plaintiff's request to require employer to attach notice to employees' paychecks); see also Parr v. Hico Concrete, Inc., No. 3:10-1091, 2011 WL 5512239, at *2 (M.D. Tenn. Nov. 10, 2011).

## D.  Tolling of Statute of Limitations

Motley's requests that the court order that the statute of limitations for putative class members be tolled as of the date of the court grants the motion for conditional certification. Because plaintiffs whose claims might be time-barred have yet to be

identified, such a request should be made if and when those plaintiffs choose to opt into the class. See Montgomery, No. 1:11-cv-1096, ECF No. 28 at 17 (denying without prejudice plaintiff's request to toll statute of limitations for yet-to-be identified class members, citing Knispel v. Chrysler Group LLC, No. 11-11886, 2012 WL 553722, at *7 (E.D. Mich. Feb. 21, 2012)). The court recommends that the requested relief be denied without prejudice at this time.

Motley further asks that the opt-in plaintiff's consent forms be deemed "filed" on the date they are postmarked. Barr does not object to this request. The court finds no reason to deny this relief. See Montgomery, No. 1:11-cv-1096, ECF No. 28 at 18 (approving plaintiff's request to deem consent forms filed on the date they are postmarked, citing Parr, 2011 WL 5512239, at *2; Snide v. Disc. Drug Mart, Inc., No. 1:11CV0244, 2011 WL 5434016, at *8 (N.D. Ohio Oct. 7, 2011)).

## E.    Contents of Notice

Motley has attached to its motion a proposed notice and proposed consent form. (ECF No. 18-2, Ex. A, B.) These proposed forms are nearly identical to the notice and consent form approved by the court in Carter. See Carter, No. 1:10-cv-1155, ECF No. 101 at Ex. A, B. The only difference between the Carter notice and Motley's proposed notice is Motley's omission of the names, addresses, and telephone numbers of defense counsel in Section 9.

Similar contact information for Barr's defense counsel should be added to that section.[7] Consistent with Motley's withdrawal of his request for a six-year statute of limitations period, any references in the notice to "six years" should be changed to "three years."

### III. RECOMMENDATION

For the reasons set forth above, it is recommended that Motley's motion for conditional certification be granted and that an order be entered:

(1) Conditionally certifying this case to proceed as an opt-in collective action for FLSA overtime violations and unjust enrichment under Tennessee law, on behalf of all hourly employees who worked for Barr in the warehouse and/or other shipping/receiving related positions in Memphis, Tennessee, within the past three years and who were denied overtime compensation and/or straight time compensation because their pay was subject to an automatic meal break deduction even when those employees performed compensable work during such unpaid meal breaks;

(2) Directing Barr, within twenty days of the order, to provide Motley with a list of names, last known addresses, and telephone numbers for all present and former hourly employees of

---

[7]Although Barr in its response asks "for the opportunity to confer with Plaintiff on the other language of the potential notice," other than the objections addressed above, Barr has not identified any language in the proposed notice or consent form that it believes would be objectionable.

Barr who worked in the warehouse and/or other shipping/receiving related positions in Memphis, Tennessee, during the previous three years, who were subject to Barr's practice of automatically deducting meal breaks;

(3) Authorizing counsel for the plaintiff to mail the notice and consent form (attached as Exhibits A and B to Motley's motion, as modified by Section E of this report and recommendation) to putative class members;

(4) Ordering Barr, within seven days of the order, to post the notice prominently at any facility where putative class members work, including but not limited to the warehouse and on employee bulletin boards;

(5) Ordering that opt-in plaintiffs' consent forms be deemed filed on the date they are postmarked; and

(6) Denying without prejudice Motley's request for tolling of the statute of limitations for potential opt-in plaintiffs, and denying his request to have Barr attach the notice to employees' paychecks.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

March 7, 2013
Date

## NOTICE

ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C).  FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.